EXHIBIT "A"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

IN THE MATTER OF THE APPLICATION
OF CARSTEN REHDER SCHIFFSMAKLER
UND REEDEREI GMBH & CO.,
    Petitioner,

CASE No.: _____

FOR DISCOVERY IN AID OF FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C.
§ 1782

**DECLARATION**

_____/

I, **DANIEL JONES**, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am Daniel Jones of Grosse Elbstrasse 47, Hamburg 22767 Germany. I am an English solicitor and a Senior Associate of Ince & Co, a Partnership of English solicitors and registered lawyers with offices worldwide including in Hamburg. I have the conduct of this matter on behalf of Carsten Rehder Schiffsmakler und Reederei GmbH & Co. ("Petitioner").

2. I make this declaration in support of Petitioner's application pursuant to 28 U.S.C. § 1782 with respect to documentation in the possession of Siemens Westinghouse Power Corporation ("Siemens") which has a place of business in Orlando, Florida.

3. I have been asked to address the posture of the lawsuit in Shanghai, China, in respect of proceedings brought in China against the Petitioner arising out of the carriage of cargo on board the vessel M/V INDUSTRIAL BRIDGE ("Vessel").

4. Ince & Co advise the Petitioner on English and German law, and in this case we sought advice on their behalf from locally licensed Chinese lawyers. Where facts stated in this declaration are not personally known to me, they are taken from Ince & Co's files and I have no reason to doubt that they are correct.

**The Voyage**

5.  In June 2000 the Vessel loaded, at the port of Masan, Korea a cargo of two sets of generators for carriage by sea to Houston, USA ("the cargo"). Bills of lading dated 6 October 2000 were issued in respect of the cargo, naming Hyundai Heavy Industries Co Ltd of Korea as the Shipper and Siemens Westinghouse Power Corp of Charlotte, NC, USA as the Consignee. On July 25, 2000 at the port of destination, Houston, USA, large quantities of water were found in the hold where the generator sets had been stowed. Both generators were severely damaged and treated as total losses.

6.  At the time of the voyage and the damage to the cargo, the Vessel was owned by Bridge Shipping Inc ("the Shipowner"). The Vessel was in the technical management of the Petitioner.

7.  The Petitioner and Bridge Shipping Inc entered into a shipmanagement contract dated 12 January 2000, pursuant to which the Petitioner provided services to the Vessel such as arranging crewing, insurance and technical management, which includes providing personnel to supervise the maintenance of the Vessel, the supply of spares and lubricants, the arrangement of drydocking and repairs, and appointment of surveyors and technical consultants.

**US Declaratory proceedings**

8.  Siemens presented a claim to the Shipowner claiming that they were the owner of the damaged cargo and alleging that they had suffered loss and damage. Shortly after this, a declaratory action was launched by the carrier of the cargo (Industrial Maritime Carriers (Bahamas)) against Siemens in the United States, in the United States District Court Eastern District of Louisiana, seeking a declaratory judgment that contractual carriers were entitled to limit their liability "per package" to USD 500,- in line with the U.S. COGSA.

9.  The declaratory action was based on the terms of the Bills of Lading which were

subject to US law and jurisdiction, and incorporated USCOGSA. The declaratory action was successful and it was held by the Eastern District of Louisiana judge, later confirmed by the Court of Appeals for the Fifth Circuit that the carrier was entitled to limit its liability to USD 500,- per package, i.e. a total of USD1,000 for the two generators.

**Proceedings in China**

10. At the end of March 2001 Siemens arrested the Vessel at the port of Shanghai, China. Security was posted by the Vessel's P&I Club (ANTRA of Germany), who have since become insolvent. In July 2001 Siemens submitted actions in the Shanghai Maritime Court against (i) Carsten Rehder; (ii) Victoria Strait Shipping Inc. and (iii) and Industrial Bridge Inc. Siemens made a claim for the alleged total loss of the generator sets, which they quantified at over US$ 2 million. Bridge Shipping Inc., owners of the Vessel at the time of the damage, were not named as defendants in this action. Victoria Strait Shipping Inc and Industrial Bridge Inc both owned the Vessel at various times, but not at the time of the voyage in question, nor at the time of damage to the cargo.

11. The Defendants to the proceedings in Shanghai defended the claim inter alia on the grounds that the Chinese court lacked jurisdiction because the Bills of Lading provided for United States law and the jurisdiction of the New Orleans Court, and on the grounds that the Claimant did not have title to sue, and that there was a lack of privity with the Defendants. On 25 June 2003 the first instance Shanghai Maritime Court gave judgment in favour of the Defendants. Siemens appealed.

12. By a judgment of 25 February 2004 the Shanghai Higher People's Court remitted the case back to the Shanghai Maritime Court for rehearing. Ince & Co were advised by Petitioner's local Chinese lawyers that this decision was apparently rendered by an appeal judge who was not familiar with the case, who was called upon to give judgment at short notice.

13. On 4 August 2006 the Shanghai Maritime Court Judge invited Siemens to withdraw their claims against Industrial Bridge Inc. and Victoria Strait but they refused. He therefore issued a Judgment the following day, in which he dismissed the claims against those two companies. There was a further hearing in the Shanghai Maritime Court on 4 December 2006. During this hearing Siemens argued that Carsten Rehder was liable in tort. Carsten Rehder, as the technical manager of the Vessel, was plainly not the Shipowner or the contractual carrier of the cargo.

14. In April 2007 the Petitioner's local Chinese lawyer, Mr SG Huang, informed us at Ince & Co that the handling judge of the Shanghai Maritime Court stated that he felt bound to find that the Petitioner was liable in tort. In December 2007 we at Ince & Co were advised by Mr SG Huang that the Shanghai Maritime Court Judge was likely to give judgment soon based on package limitation under Chinese law, in the amount of SDR 400,000, as a compromise between finding for Siemens in full and declaring that the Petitioner was not liable.

15. On 21 February 2008 the Shanghai Maritime Court indeed gave judgment in favour of Siemens against the Petitioner in the amount of USD601,373.14. This was on the basis that the Petitioner was entitled to limit its liability under Chinese law to SDR (Special Drawing Rights) 400,000, and the rate of conversion applicable was 1 SDR = USD1.56282.

16. A key ground on which the Petitioner has sought to defend the proceedings in China is that on no analysis was the Petitioner, or could he possibly be regarded as, the contractual carrier under the Bills of Lading. Petitioner did not own the Vessel, did not issue or sign the Bills of Lading, and was not identified in any way on the Bills of Lading, and were not involved in the carriage of the cargo. They provided technical management to the Vessel as described above.

17. Judgment was entered against the Petitioner in tort on the basis that the

Petitioner was the "actual carrier" (which I understand to be a concept of Chinese law and under which a duty of care may be owed). The court reached such a conclusion by referring to a "letter of confirmation" dated 2 April 2001 produced by the Petitioner at about the time of the arrest mentioned above that was construed by the court as confirming that the Petitioner was the operator of the Vessel, despite the Petitioner having provided evidence that it was the technical manager only.

18. As a result of the abovementioned judgment, the Petitioner now faces a principal liability of over USD600,000. It has also has incurred legal costs running into hundreds of thousands of US dollars in contesting the proceedings in China. I understand Petitioner faces the possibility of a Chinese judgment against it being recognized and enforced by the German courts.

**Appeal in China**

19. The Petitioner has appealed to the Appeal Court in China (the "Appeal"). An Appeal date has recently been fixed at short notice for 28 October 2008. Ince & Co and therefore the Petitioner were notified of this only on 17 September 2008. On 7 October 2008 SG Huang advised Ince & Co that the Appeal may have been postponed to 10 or 11 November 2008, but the Appeal Court has not yet confirmed this apparent postponement.

**Insurance issue**

20. The Petitioner has been advised that Siemens were paid by their cargo underwriters in respect of the damage to the cargo. An employee of the Petitioner, Mr Graen, was advised by a responsible employee of insurance brokers AON in Germany, that cargo underwriters had paid Siemens in respect of Siemens' claim under their cargo insurance. AON apparently were Siemens' insurance brokers for the purposes of cargo insurance. (A copy of his sworn affidavit at law dated 25 June 2008, for use in the Appeal hearing, is attached to this declaration as Exhibit 1).

21. This is potentially very important for the Chinese proceedings, because the advice Ince & Co have received from the Petitioner's local Chinese licensed lawyer, S G Huang, and also from my colleague at Ince & Co Hong Kong Mr Vincent Xu (who is also licensed to practise in China) is that where insurers have paid claims to their Assured, they must pursue subrogated recovery actions in China in their own name, and not the name of the Assured. I am advised that the Assured, having been paid, may have no title to sue.

22. The Petitioner potentially has a defence to the proceedings brought in China if it can adduce evidence that Siemens were paid by their cargo underwriters in respect of the damage to the generators. Underwriters have never sought to pursue a claim in their own name. The proceedings have only ever been pursued in the name of Siemens. The time bar for proceedings in China is two years, and the date of the alleged damage is over eight years ago, meaning that the Petitioner potentially has a time bar defence to any claim by Underwriters.

23. The purpose of these proceedings in the US is to obtain evidence to produce to the Chinese in the Appeal confirming that Siemens was indeed paid by its cargo underwriters, and when. Although it is an Appeal, Ince & Co are informed by Mr. S G Huang and Mr. Xu that Petitioner would be able to submit the underwriter payment information to the Court at the Appeal hearing.

Executed in Hamburg, on the 8th day of October, 2008.

DANIEL JONES

# EXHIBIT 1

# AFFIDAVIT AT LAW

privileged and confidential - attorney work product

contains or is based upon materials collected or prepared in anticipation of litigation

I, **Matthias Graen**, c/o *ANTRA Niederelbe-Trampfahrt Versicherungs AG*, Drochterser Str. 26, 21706 Drochtersen, Germany,

**WILL SAY AND MAKE A STATUTORY DECLARATION BY WAY OF AN AFFIDAVIT AT LAW:**

1. I was born in Hannover on October 16, 1959. Having graduated from school in 1978 I became an apprentice as merchant and accountant. This apprenticeship was successfully terminated in 1981. My identification card which is enclosed to this affidavit, carries the number 1350 81 77 28.

2. In 1981 I became accountant, later head of accounting of Messrs. *Assekuranzverein Hamburg-Cranz VVaG* being a maritime underwriter for hull & machinery risks on a mutuality basis. This hull underwriter later merged with another mutuality underwriter, Messrs. *Norddeutscher Assekuranzverein VVaG*, following which both the associations became one club under the name of *NAVC Norddeutscher Assekuranz-Verein Hamburg-Cranz VVaG*, Hamburg. I have worked for this association except for two years (when I was employed by the tax advisors of the association) until 1997.

   On April 1, 1997 I was employed with and became head of accounting of Messrs. *"TRAMPFAHRT" Betriebs-Risiko-Versicherung für Seefrachtschiffe a.G.* which (after a merger with another maritime underwriter) became *ANTRA Niederelbe-Trampfahrt Versicherungs AG* (the *"Association"*), resident Große Elbstr. 36, 22767 Hamburg, Germany and Drochterser Str. 26, 21706 Drochtersen, Germany.

3. On October 10, 2003 the *Association* went bankrupt and was put under public receivership. My employment contract as an accountant of the association was maintained and continued with by the public receiver. This employment contract was terminated to June 30, 2005.

4. As from July 1, 2005 I am employed as head of accounting of Messrs. *Carsten Rehder Schiffsmakler & Reederei GmbH & Co. KG*, Hamburg ("*Carsten Rehder*"). However, based on an agreement between *Carsten Rehder* and the public receiver of the *Association* I am still working on a part-time basis for the *Association* for the purpose of assisting the public receiver in the spin-off of the *Association*.

B 01.3154.00 91396

5. I make this statutory declaration in relation to the proceedings brought by *Siemens Westinghouse Power Corporation* in the courts of the Peoples Republic of China against, amongst others, *Carsten Rehder*. My understanding is that this law suit is in relation to cargo that was damaged on board the M/V "INDUSTRIAL BRIDGE" (the "*Vessel*") on a voyage from Masan, South Korea, to Houston, USA. The cargo consisted of two sets of generators which were shipped in the said vessel in June 2000.

6. I know from my time as accountant of the *Association* that the *Vessel* was entered against P&I risks (full cover) with the *Association*. In my capacity as head of accountant of the association, however, I was not aware of details of the casualty.

7. From the insurance policy I have recently reviewed in my capacity as part-time assistant of the public receiver of the *Association* I know and can confirm that *Intermarine Inc.*, Houston, USA, was - among others - a co-assured under the policy.

   The public receiver of the *Association*, Rechtsanwalt *Jan Wilhelm*, had asked me some time ago to possibly clarify whether the claims related to the above damage and filed against the *Vessel* under the scope of the policy have been covered and paid by some cargo underwriters.

8. For this purpose I carried out some inquiries. I firstly contacted Ms. *Vogler-Bobzin* ob Messrs. *AON Jauch & Hübener GmbH*, Hamburg, being a major maritime and transport underwriting broker. If I do recollect this right Ms. *Vogler-Bobzin* informed me that the sets of generators during its sea transport with the M/V "INDUSTRIAL BRIDGE" was covered by a group of underwriters under the lead of Messrs. *Allianz*. Ms. *Vogler-Bobzin* further told me that the transport damages sustained to the sets of generators had been dealt with by *AON Jauch & Hübener GmbH*, Mühlheim (Germany).

9. Thereafter I made contact to *AON Jauch & Hübener*, Mühlheim. I spoke over the telephone to Mr. *Stephan Wolff*. I asked Mr. *Wolff* whether he could give me information on the settlement of the damages of the generator sets aboard the "INDUSTRIAL BRIDGE". Mr. *Wolff* confirmed that he was acting as the claim handler in relation to the above damage. He further confirmed that the underwriters had completely settled the claim and paid the insurance proceeds of around USD 3.690.000,- to *Siemens-Westinghouse*.

   I asked Mr. Wolff whether he could confirm this statement in writing to me together with the exact amount paid to Siemens-Westinghouse. Mr. Wolff confirmed that he would give me this confirmation in writing soon.

   This telephone conversation with Mr. Wolff was done on May 21, 2008.

10. When I did not receive the before said confirmation I again called Mr. *Wolff* by telephone on May 28, 2008. Mr. *Wolff* now asked whether I could shortly explain in writing for which purpose I had requested his confirmation. This I did and sent out the requested mail to him under even date.

6.01.3164.00 91398

Soon thereafter *AON Jauch & Hübener GmbH*, Mühlheim, were contacted by Messrs. *Gustav Ziegler Havariebüro GmbH & Co. KG*, Hamburg, with the result that the written confirmation promised by Mr. *Wolff* was eventually refused. No explanation was given to me so far.

11. From the files of the *Association* I learned that Messrs. *Gustav Ziegler* are acting as recovery agents for the transport underwriters. In this capacity *Gustav Ziegler* have instituted legal proceedings in the name of *Siemens Westinghouse* against the owners of the M/V "INDUSTRIAL BRIDGE" and *Carsten Rehder* in Shanghai.

I make this Affidavit on request of *Carsten Rehder* and cofirm that all my above statements are correct and nothing but the truth.

Signed

Matthias Graen

Hamburg, dated 25.06.2008



**NOTARE**
AN DER PALMAILLE

BURMESTER | ZIER | KÖPP

<u>Deed No. 2275/08 Z</u>

I, the undersigned Notary Public

**Heiko Zier,**

Notary Public of this Free and Hanseatic City of Hamburg, hereby certify the above is the true signature, subscribed in my presence, of:

Mr. Matthias Graen,
born on 16.10.1959,
address: Drochterser Straße 26, 21706 Drochtersen,
- personally known to me -.

Hamburg, 25.6.2008

                                                  **L.S. sign Zier**
                                                  Zier, Notary Public

cost accounting
(does not apply as bill)
value: 50.000,00 EUR

| | | |
|---|---|---|
| Par 45 certification | 33,00 | EUR |
| net total | 33,00 | EUR |
| Par 151a value added tax 19% | 6,27 | EUR |
| total | 39,27 | EUR |

**sign Zier**
Zier, Notary Public