EXHIBIT "D"

Westlaw.

354 F.Supp.2d 269　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
354 F.Supp.2d 269

C In re Servicio Pan Americano de Proteccion
S.D.N.Y.,2004.

United States District Court,S.D. New York.
In re the Application of SERVICIO PAN
AMERICANO DE PROTECCION, C.A. for an
Order of Discovery of HSBC Bank USA, Pursuant to
28 U.S.C. § 1782
No. M-15-377 (VM).

Dec. 6, 2004.

**Background:** Venezuelan security firm applied for order requiring bank to produce documents located within district for use in legal proceedings in Venezuela.

**Holding:** The District Court, Marrero, J., held that discovery in aid of foreign litigation was warranted.

Application granted.

West Headnotes

[1] Federal Civil Procedure 170A ⚖1312

170A Federal Civil Procedure
　　170AX Depositions and Discovery
　　　　170AX(C) Depositions of Parties and Others Pending Action
　　　　　　170AX(C)1 In General
　　　　　　　　170Ak1312 k. Letters Rogatory from Without the United States. Most Cited Cases
Bank asserting claim in Venezuela against Venezuelan security firm to recover funds stolen by firm employee would be required to produce documents concerning any insurance claim made, and any insurance payment received, by bank for loss at issue in Venezuelan proceeding, despite bank's contention that firm should be required to wait until evidentiary stage of Venezuelan proceeding, and to seek discovery from Venezuelan court in first instance, where, under Venezuelan law, partial or complete reimbursement by insurer would deprive bank of standing to bring suit, and documents were unobtainable under Venezuelan discovery rules for purely technical reasons. 28 U.S.C.A. § 1782.

[2] Federal Civil Procedure 170A ⚖1312

170A Federal Civil Procedure
　　170AX Depositions and Discovery
　　　　170AX(C) Depositions of Parties and Others Pending Action
　　　　　　170AX(C)1 In General
　　　　　　　　170Ak1312 k. Letters Rogatory from Without the United States. Most Cited Cases
Three elements must be satisfied before statute permitting a district court to provide discovery in aid of foreign litigation may be invoked: (1) that person from whom discovery is sought reside or be found in district of district court to which application is made, (2) that discovery be for use in proceeding before foreign tribunal, and (3) that application be made by foreign or international tribunal or any interested person. 28 U.S.C.A. § 1782.

[3] Federal Civil Procedure 170A ⚖1312

170A Federal Civil Procedure
　　170AX Depositions and Discovery
　　　　170AX(C) Depositions of Parties and Others Pending Action
　　　　　　170AX(C)1 In General
　　　　　　　　170Ak1312 k. Letters Rogatory from Without the United States. Most Cited Cases
Twin aims of statute permitting district court to provide discovery in aid of foreign litigation are to provide efficient means of assistance to participants in international litigation in federal courts, and to encourage foreign countries by example to provide similar means of assistance to United States courts. 28 U.S.C.A. § 1782.

[4] Federal Civil Procedure 170A ⚖1312

170A Federal Civil Procedure
　　170AX Depositions and Discovery
　　　　170AX(C) Depositions of Parties and Others Pending Action
　　　　　　170AX(C)1 In General
　　　　　　　　170Ak1312 k. Letters Rogatory from

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Without the United States. Most Cited Cases
Litigants are not required to seek information through foreign or international tribunal before requesting discovery from district court, provided that dispositive ruling by tribunal is within reasonable contemplation. 28 U.S.C.A. § 1782.

**[5] Federal Civil Procedure 170A ⇐1312**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(C) Depositions of Parties and Others Pending Action
            170AX(C)1 In General
                170Ak1312 k. Letters Rogatory from Without the United States. Most Cited Cases
In evaluating applications for discovery in aid of foreign litigation, district courts should consider: (1) whether person from whom discovery is sought is participant in foreign proceeding; (2) nature of foreign tribunal, character of proceedings underway abroad, and receptivity of foreign government or court or agency abroad to United States federal court judicial assistance; and (3) whether request conceals attempt to circumvent foreign proof-gathering restrictions or other policies of foreign country or United States, or contains unduly intrusive or burdensome requests. 28 U.S.C.A. § 1782.

## *270 DECISION AND ORDER

MARRERO, District Judge.
Petitioner Servicio Pan Americano de Protección (hereinafter, "Pan Americano"), a Venezuelan security firm that is a subsidiary of Brink's Security International, Inc., has applied to this Court for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") requiring HSBC Bank USA National Association ("HSBC") to produce documents located within this District for use in legal proceedings underway in Venezuela. In the underlying Venezuelan legal proceedings, HSBC is seeking more than $10 million in damages and interest from Pan Americano for losses it sustained when a Pan Americano employee absconded with $5.6 million in U.S. currency that was sent by HSBC from New York to Venezuela and placed in Pan Americano's custody. Pan Americano seeks limited assistance from this Court, asking only for "documents concerning any insurance claim made, and any insurance payment received, by HSBC for the loss at issue in the Venezuelan proceeding."

(Pan Americano Memorandum of Law in Support of Application for Discovery Pursuant to 28 U.S.C. § 1782 (hereinafter, "Pan Americano Mem. of Law") at 2.) Pan Americano claims that, to the extent such monies have been received from HSBC's insurer, HSBC lacks standing under Venezuelan law to sue Pan Americano for its losses.

This Court exercises its discretion under 28 U.S.C. § 1782 to grant Pan Americano's application. It concludes that issuance of an order compelling HSBC to divulge the requested insurance-related documents would further the interests of the federal statute and aid the Venezuelan tribunal hearing the underlying suit in reaching an efficient and accurate disposition of HSBC's claims against Pan Americano.

## I. BACKGROUND

### A. THE UNDERLYING LEGAL PROCEEDINGS

On June 12, 2001, Pan Americano took delivery of $5.6 million in U.S. currency carried by agents of HSBC from New York to Maiquetía International Airport in Caracas, Venezuela. Pan Americano was to deliver the currency to two Venezuelan banks the next day. While the currency was in Pan Americano's custody, it was stolen by a Pan Americano employee. (See Declaration of Julio Bacalao del Castillo in Support of Application for Discovery Pursuant to 28 U.S.C. § 1782, dated October 20, 2004 (hereinafter, "Bacalao Decl.") ¶ 2.)

On November 14, 2001, HSBC instituted a legal proceeding in a Venezuelan civil court against Pan Americano seeking to recover the lost $5.6 million, plus interest and costs. That proceeding was dismissed on June 11, 2003, for HSBC's failure to comply with a court order directing it to correct technical defects in its pleadings. However, under Venezuelan law, HSBC was not precluded from instituting a second proceeding to recover the funds. It did so on February 19, 2004, when it filed suit in a Venezuelan criminal court as a *271 third party to legal proceedings underway against the Pan Americano employee who had stolen the funds. In that proceeding, HSBC sought $2.8 million as compensation for pain and suffering allegedly suffered by the corporation as a result of the crime in addition to the damages, interest, and costs enumerated in the first suit. (Id. ¶¶ 3-5.) On October

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

20, 2004, however, HSBC was ordered to refile its suit against Pan Americano in civil court after a decision by the Venezuelan Supreme Court of Justice voided the procedure under which HSBC had sought recovery against Pan Americano in criminal court. (*Id.* ¶ 6.)

The posture of the case is not entirely clear at present. Pan Americano contends that HSBC will need to restart its suit from the beginning when it is heard again by the civil courts (*see id.*), but HSBC argues that the proceedings must be transferred to a civil court in a more advanced stage of the proceedings, reflecting the activities that had taken place in criminal court before the procedure was invalidated. (*See* Declaration of Aurelio Fernandez-Concheso in Opposition to the Petition, dated Nov. 19, 2004 (hereinafter, "Concheso Decl.") ¶ 17.) HSBC is currently appealing a decision that sided with Pan Americano and rendered the criminal proceedings null and void. According to statements made by counsel for Pan Americano before this Court sitting in Part I on November 24, 2004, at a hearing on Pan Americano's application (hereinafter, "the Hearing"), HSBC's suit may soon go to trial if its appeal is successful.

B. *THE REQUESTED DISCOVERY*

Pan Americano seeks an order from this Court pursuant to Section 1782, which provides, in pertinent part, that:

The district court of the district in which a person resides or is found may order him to ... produce a document ... for use in a proceeding in a foreign or international tribunal.... The order may be made ... upon the application of any interested person.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for ... producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The order Pan Americano seeks under Section 1782 would compel HSBC to turn over all "documents concerning any insurance claim made, and any insurance payment received, by HSBC for the loss at issue in the Venezuelan proceeding" (Pan Americano Mem. of Law at 2), and to deliver responsive documents to the Clerk of Court of the Southern District of New York. Pan Americano would then be able to obtain certified copies of the responsive documents from the Clerk of Court for use in the Venezuelan litigation.[FN1]

> FN1. According to Pan Americano, a Venezuelan court will admit foreign documents such as the insurance-related documentation it seeks into evidence only if they are legalized under the procedures established by the Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents (1961), to which Venezuela and the United States are parties. If legalized according to the procedure specified by the Hague Convention, a Venezuelan court would have to treat the documents as if they had been produced in Venezuela. (*See* Bacalao Decl. ¶¶ 11-12.)

Pan Americano claims that while these insurance-related documents would be directly relevant to its defenses in the Venezuelan*272 proceedings, and may even completely deprive HSBC of standing to bring the Venezuelan suit, a technical peculiarity of Venezuelan civil procedure would prevent Pan Americano from discovering the documents absent this Court's assistance. According to Pan Americano, under Venezuelan law a party who is compensated by insurance for a loss lacks standing to sue for that loss. Thus, under this theory HSBC would lack standing to recover against Pan Americano for losses associated with the currency theft to the extent that its losses were compensated by insurance. Any documents proving the existence of insurance coverage and payment would thus be central to Pan Americano's defenses. (*See* Bacalao Decl. ¶¶ 9-10.) Yet under Venezuelan rules of civil procedure, Pan Americano could not obtain these critical insurance-related documents through discovery if it did not have evidence that specific documents related to HSBC's hypothetical coverage and payment actually existed. According to HSBC's own expert, Article 436 of the Venezuelan Code of Civil Procedure requires that a party already have a document, or knowledge of the data contained in the document, in order to obtain it

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

from another party. Furthermore, the requesting party must have reason to know that the target of a discovery request actually possesses the document in order to be able to obtain it under the discovery rules.[FN2] (See Concheso Decl. ¶¶ 22-23; Bacalao Decl. ¶ 10.)

> FN2. HSBC's expert disputes Pan Americo's arguments regarding the availability of the requested discovery under Venezuelan civil procedural rules, as well as the effect of the documents on HSBC's standing to sue Pan Americano under Venezuelan law. (See Concheso Decl. ¶¶ 19-20, 22-26.) HSBC does not submit any proof, however, that a Venezuelan court would reject evidence of HSBC's insurance coverage if produced pursuant to a Section 1782 order, or that the evidence would be irrelevant to the Venezuelan tribunal's adjudication of the dispute between the parties. Because there is no "authoritative proof that [the Venezuelan] tribunal would reject [the requested] evidence obtained with the aid of Section 1782," this Court will not speculate further regarding the complexities of Venezuelan law, or permit its decision to be influenced by a "battle-by-affidavit of international legal experts...." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir.1995). It will instead credit Pan Americano's arguments that the requested documents may be relevant to its defenses and accepted by the Venezuelan tribunal hearing the underlying suit.

In addition to disputing Pan Americano's interpretation of Venezuelan substantive law and discovery rules related to the dispute, HSBC argues that Pan Americano's request to this Court is premature. According to HSBC, the Venezuelan proceedings have not progressed to an "evidentiary stage" at which Pan Americano would have the opportunity to seek discovery of the requested information directly from HSBC. HSBC argues that the Venezuelan tribunal "should be allowed, at a minimum, to make an initial determination whether or not the discovery requested by Pan Americano is appropriate for use in the Venezuelan proceedings." (Respondent HSBC Bank's Memorandum of Law in Opposition to the Application for Discovery Pursuant to 28 U.S.C. § 1782 (hereinafter, "HSBC Mem. of Law") at 3.) An order by this Court granting Pan Americano's application would, under this logic, risk affronting "the Venezuelan Court or the Venezuelan sovereignty" (*id.* at 5), if granted before a Venezuelan tribunal could first rule on the discovery request.

## II. DISCUSSION

[1][2] The Court will exercise its discretion under Section 1782 to grant Pan Americano's application, concluding that the company is authorized to invoke the *273 aid of the statute and that the interests of the statute would be served by granting its request. "Three elements must be satisfied before § 1782 may be invoked: (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or any interested person." *In re Ishihara Chemical Co.*, 251 F.3d 120, 124 (2d Cir.2001) (internal citations and quotation marks omitted), *overruled on other grounds by Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S.Ct. 2466, 2480, 159 L.Ed.2d 355 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir.2004). Pan Americano complies with each of these three statutory requirements: HSBC acknowledges that it can be "found" in this District, and does not dispute that the relevant documents are actually located in the District; the discovery is for use before a Venezuelan tribunal; and Pan Americano, as a defendant in the Venezuelan suit, is clearly an "interested person" under the statute.

[3] Second, the Court concludes that granting Pan Americano's application would advance the "twin aims of the statute," which are to provide "efficient means of assistance to participants in international litigation in our federal courts" and to encourage "foreign countries by example to provide similar means of assistance to our courts." *Ishihara*, 251 F.3d at 124. The information that Pan Americano seeks would be directly relevant to its defense of HSBC's suit. If Pan Americano is correct in arguing that under Venezuelan law, HSBC's partial or complete reimbursement by an insurer would deprive the company of standing to bring the Venezuelan

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

suit, then any evidence of the existence of such insurance policies or such reimbursement would be central to Pan Americano's defense. Granting Pan Americano's application would facilitate judicial efficiency by enabling the Venezuelan tribunal hearing HSBC's claims to determine quickly if the suit could be disposed of, or if the scope of litigation could be limited, at the onset of what will now be the third proceeding related to this matter. It may also encourage Venezuelan tribunals to provide similar assistance to United States courts, in which liberal discovery rules encouraging exchange of litigants' insurance-related information, see, e.g., Fed.R.Civ.P. 26(a)(1)(d), as well as other material, may be frustrated in a future case without the cooperation of Venezuelan tribunals.

[4] The Court rejects HSBC's argument that Pan Americano should be required to wait until the "evidentiary stage" of the Venezuelan proceeding, and to seek discovery from a Venezuelan court in the first instance, before it should be entitled to relief under Section 1782. While in some instances a court may choose to deny an application or stay proceedings until a foreign tribunal has ruled on a Section 1782 petitioner's discovery request, this Court is not required to do so. The Second Circuit has explicitly "refused to engraft a quasi-exhaustion requirement onto Section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." Euromepa, 51 F.3d at 1098 (internal citations and quotation marks omitted). In this case, if HSBC succeeds in persuading a Venezuelan appellate court that the earlier criminal proceedings were not null and void, Pan Americano will be required to defend itself in civil court at an advanced stage of legal proceedings and may not have time to submit a renewed application to this Court, have it adjudicated, and obtain documents pursuant to this Court's *274 order before the Venezuelan tribunal will be called upon to render dispositive rulings. Furthermore, this Court may issue an order compelling HSBC to turn over documents to Pan Americano even if HSBC's appeal does not succeed and the company is forced to reinitiate its suit in Venezuelan civil court. Section 1782 may be invoked even where foreign legal proceedings are not even underway, provided that "a dispositive ruling" by the Venezuelan tribunal is "within reasonable contemplation." Intel, 542 U.S. at ----, 124 S.Ct. at 2480. There is thus no reason for this Court to delay ruling on Pan Americano's application, or to deny it for failing to exhaust Venezuelan remedies.

[5] The Court also concludes that the considerations recently articulated by the United States Supreme Court in Intel do not stand in the way of granting Pan Americano's application. In that decision, the Supreme Court instructed district courts to consider: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; and (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," or contains "unduly intrusive or burdensome requests," id., 542 U.S. at ----, 124 S.Ct. at 2483, when evaluating applications for assistance under Section 1782.

While the first factor articulated by the Supreme Court, whether the entity from whom discovery is sought is a party to the foreign proceeding, counsels in favor of HSBC, the apparent limitations of Venezuelan discovery rules suggest that the exercise of jurisdiction by this Court may be necessary to provide Pan Americano with the documents it seeks. The Supreme Court stated in Intel that this factor may lead a court to decline a Section 1782 application where a foreign court can exercise "jurisdiction over those appearing before it, and can itself order them to produce evidence" requested by the application. Id. While HSBC may subject to the jurisdiction of a Venezuelan court hearing its suit against Pan Americano, a Venezuelan court apparently cannot order HSBC to produce the requested insurance documentation unless Pan Americano has detailed information about the nature and extent of the documentation. Pan Americano cannot obtain that necessary background information because HSBC has, to this point, refused to produce it. Because the Venezuelan court may not be able to "itself order [HSBC] to produce" the requested evidence, id., exercise of this Court's power under Section 1782 may be necessary to enable discovery of the documents.

Turning to the second consideration articulated by the Supreme Court, this Court concludes that nothing

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

about the nature of the Venezuelan civil court that will be hearing HSBC's suit, the character of the suit, or the apparent receptivity of Venezuelan courts to U.S. federal judicial assistance counsels against granting Pan Americano's application. The Venezuelan proceedings are clearly judicial in nature, and do not appear to differ in most respects from analogous legal proceedings in the United States, in which the discovery Pan Americano is seeking would be readily available and relevant to the litigation. Venezuela has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation.

Analyzing the third *Intel* factor, Pan Americano's application does not appear to conceal an attempt to circumvent Venezuelan proof-gathering restrictions or policies, *275 or to contain unduly intrusive or burdensome requests. The Court instead understands Pan Americano's application as a reasonable effort to overcome a technical limitation of Venezuelan discovery rules in order to obtain documents that are critical to its defenses from a corporation located within this District. Pan Americano seeks to obtain information that Venezuelan courts would appear to readily accept if properly authenticated, and that would facilitate the efficient and accurate disposition of HSBC's suit against it. While the United States' documentary discovery rules appear significantly more liberal than those of Venezuela, the Supreme Court recognized in the *Intel* case that a foreign court's procedural discovery limitations, as opposed to substantive limits on the admissibility of discovered evidence, should not prevent a district court from enabling a foreign litigant to obtain admissible evidence here pursuant to Section 1782. According to the Supreme Court:

When the foreign tribunal would readily accept relevant information discovered in the United States, application of a foreign discoverability rule [i.e., a rule that would require a document to be discoverable in the foreign tribunal in order to be discoverable pursuant to a Section 1782 order] would be senseless. The rule in that situation would serve only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.

*Id.* at 2481-82. Since the information Pan Americano seeks will be useful to a Venezuelan court but potentially unobtainable under Venezuelan laws for purely technical reasons, application of a foreign discoverability rule in this case would be senseless.

Finally, Pan Americano's request is not unduly intrusive or burdensome, particularly given the company's assurances to the Court at the Hearing that it would cooperate fully with HSBC's reasonable discovery requests. Pan Americano seeks documents related to HSBC's insurance coverage for a single loss on a single day. HSBC did not argue, either in its brief or in oral arguments before the Court, that compliance with the request would be overly burdensome or would breach the company's privacy or confidentiality. Furthermore, any burden imposed on HSBC by this Order will be counterbalanced by Pan Americano's promised good-faith efforts in response to HSBC's reasonable requests for discovery of documents located in Venezuela. Thus, there is no reason why the *Intel* factors should prevent this Court from granting Pan Americano's application.

### III. *CONCLUSION*

For the reasons stated above, it is hereby

**ORDERED** that the application of petitioner Servicio Pan Americano de Protección ("Pan Americano"), pursuant to 28 U.S.C. § 1782, to take discovery of all documents concerning any insurance claim made, and any insurance payment received, by respondent HSBC Bank USA National Association ("HSBC") for the losses at issue in Venezuelan legal proceedings brought by HSBC against Pan Americano, is hereby granted; it is further

**ORDERED** that HSBC shall submit all responsive documents to the Clerk of Court within thirty (30) days of the date of this Order. Any such submission shall include a cover sheet that includes the caption and docket number listed on this Order, as well as an indication that the documents being submitted are responsive to this Order; and it is finally

**ORDERED** that in all other respects, responsive documents shall be produced in *276 accordance with the Federal Rules of Civil Procedure.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

354 F.Supp.2d 269  
354 F.Supp.2d 269

Page 7

**SO ORDERED.**

S.D.N.Y.,2004.  
In re Servicio Pan Americano de Proteccion  
354 F.Supp.2d 269

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.